## UNITED STATES v. PIN KWAN.

(Circuit Court of Appeals, Second Circuit.   February 28, 1900.)

### No. 94.

1. ALIENS—DEPORTATION OF CHINESE—EVIDENCE OF RIGHT TO ENTER.

In a proceeding for the deportation of a Chinese person charged with having unlawfully entered the United States, it is error to admit any evidence of the right of the defendant to enter, except the certificate issued by his government, which is made by statute the sole evidence of such right.[1]

2. SAME—MERCHANT.

Evidence that a Chinese person since he came to the United States has been assisting in the business of a mercantile company, keeping the books and selling goods, and that he has an interest in the stock of goods of such company, is insufficient to establish his status as a merchant within the statute; it not being shown that his name appears in the partnership articles, or that he is in fact a partner.

In Error to the District Court of the United States for the Northern District of New York.

This cause comes here upon a writ of error to review a decision of the district court, Northern district of New York (94 Fed. 824), reversing a decision of the United States commissioner which ordered that defendant, a Chinese person, should be deported to the empire of China.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge.   On March 17, 1899, complaint was duly made under oath charging that Pin Kwan on October 27, 1897, "did unlawfully come into the United States from the empire of China, the said Pin Kwan being then and there a Chinese person and laborer, and not being a merchant or diplomat or other officer of the Chinese or any other government, and without producing the certificate required of Chinese persons seeking to enter the United States, and that he is not entitled to be or remain within the United States."   There is no contention that there was any error in the procedure followed by the United States commissioner, which appears to be that prescribed in section 12 of the act of 1882, as amended by the act of July 5, 1884 (23 Stat. 115), and in section 13 of the act of September 13, 1888 (25 Stat. 476).

A brief history of the treaties with China dealing with the question of immigration into the United States, and of the legislation subsequent thereto, will be found in U. S. v. Ah Fawn (D. C.) 57 Fed. 591.   It will not be necessary to examine into the details of the several exclusion acts.   Five years before defendant's entry into this country, congress had passed the act of May 5, 1892 (27 Stat. 25), the first section of which provides that:

"All laws now in force prohibiting and regulating the coming into this country of Chinese persons and persons of Chinese descent are hereby continued in force for a period of ten years from the passage of this act."

[1] As to citizenship of Chinese persons, see notes to Gee Fook Sing v. U. S., 1 C. C. A. 212, and Lee Sing Far v. U. S., 35 C. C. A. 332.

100 F.—39

Among the laws then in force were these: The act of May 6, 1882 (22 Stat. 58), as amended by the act of July 5, 1884 (23 Stat. 115), section 1 of which provided that:

"From and after the passage of this act, and until the expiration of ten years next after the passage of this act, the coming of Chinese laborers to the United States * * * is hereby suspended, and during such suspension. it shall not be lawful for any Chinese laborer to come from any foreign port or place, or having so come to remain within the United States."

The treaty with China of November 17, 1880 (22 Stat. 826), provided in article 2:

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord," etc.

The sixth section of the act of 1882, as amended by the act of 1884, supra, provided:

"That in order to the faithful execution of the provisions of this act, every Chinese person, other than a laborer, who may be entitled by said treaty or this act to come within the United States, and who shall be about to come to the United States, shall obtain the permission of and be identified as so entitled by the Chinese government, or of such other foreign government of which at the time such Chinese person shall be a subject, in each case to be evidenced by a certificate issued by such government, which certificate shall be in the English language, and shall show such permission, with the name of the permitted person in his or her proper signature, and which certificate shall state the individual, family, and tribal name in full, title or official rank, if any, the age, height and all physical peculiarities, former and present occupation or profession, when and where and how long pursued, and place of residence of the person to whom the certificate is issued, and that such person is entitled by this act to come within the United States. If the person so applying shall be a merchant said certificate shall, in addition to the above requirements, state the nature, character, and estimated value of the business carried on by him prior to and at the time of his application as aforesaid: provided, that nothing in this act nor in said treaty shall be construed as embracing within the meaning of the word 'merchant,' hucksters, peddlers, or those engaged in taking, drying, or otherwise preserving shell or other fish. * * *"

After providing for a visé of said certificate by a diplomatic or consular representative of the United States at the port or place of departure, the section concludes as follows:

"Such certificate viséd as aforesaid shall be prima facie evidence of the facts set forth therein, and shall be produced to the collector of customs of the port in the district in the United States at which the person named therein shall arrive, and afterwards produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disproved by the United States authorities."

Section 15 of the said act of 1882, as amended by the act of 1884, provided:

"That the provisions of this act shall apply to all subjects of China and Chinese, whether subjects of China or any foreign power; and the words Chinese laborers, wherever used in this act shall be construed to mean both skilled and unskilled laborers and Chinese employed in mining."

All these provisions of statute were re-enacted and continued in force by the exclusion act of May 5, 1892, supra. Subsequently, and

prior to defendant's entry, the convention of December 8, 1894 (28 Stat. 1210), was entered into by the United States and China, the third article of which provides:

"The provisions of this convention shall not affect the right at present enjoyed of Chinese subjects, being officials, teachers, students, merchants or travelers for curiosity or pleasure, but not laborers, of coming to the United States and residing therein. To entitle such Chinese subjects as are above described to admission into the United States, they may produce a certificate from their government or the government where they last resided viséd by the diplomatic or consular representative of the United States in the country or port whence they depart."

Finally the act of November 3, 1893 (28 Stat. 7), was passed, containing the following:

"Sec. 2. The words 'laborer' or 'laborers' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation. The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

The certificate which defendant procured before he left China reads as follows (the material parts only being given):

"This certificate is issued * * * to Ng Pin Kwan, a Chinese person 'other than a laborer,' who is about to go to the United States. * * * Name of permitted person in his or her proper signature. Full name, individual, Pin Kwan; family, Ng, tribal, ———. Title official rank, if any ———. Age, 25. Height, feet, 5; inches, 3¾. Physical marks or peculiarities, scar on forehead. Former occupation or profession, assistant accountant. Present occupation or profession, assistant accountant. Where pursued, 82 Wing Lok street, Hong Kong. When, 1892 to 1897. For how long, 5 years. Place of residence, Hong Kong. Who is going to Buffalo, N. Y., to join Quong Sing Lung & Company, 500 Michigan street, and attend the business of the said company."

It is manifest that this certificate fails to conform to the requirements of the statute; for, although defendant claims that he applied as a merchant, the certificate wholly fails to "state the nature, character, and estimated value of the business carried on by him prior to and at the time of his application." Evidently a printed form which had been prepared for a person other than a merchant was used. Defective though it was, however, it was signed by the representative of the Chinese government, was viséd by the United States consul at Hong Kong, and accepted by the government officers as sufficient proof of right to enter the United States when presented by defendant upon his arrival at Buffalo. These facts do not constitute an adjudication, nor can they be construed into an estoppel of the sovereign, exercising its political power, to exclude or deport aliens. Nevertheless, if defendant were in fact entitled to come here, the courts might be astute to find some way to avoid merely formal defects in his certificate. But the fundamental difficulty is that defendant was not entitled to entry when he came here, nor

is he entitled to remain, even if his certificate were correct in form; the statute supra providing that the certificate may be controverted, and the facts therein stated disproved, by the United States authorities.

Upon the hearing before the United States commissioner the testimony of a Chinese person was offered on the part of defendant, and received, under the objection of the district attorney. This was error. The statute supra expressly provides that the certificate "shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States." But the testimony thus improperly received was insufficient. Young Chuck testified that he (the witness) has carried on a general merchandise business in Buffalo for seven years—evidently in connection with the Quong Sing Lung Company—since he signed the lease for said company. The company carries a stock of tea, wines, tobacco, clothing, etc., worth about $8,000, and insured in the name of the company for $5,000. He further testified that since his arrival Pin Kwan has lived at the stores of the company, "attends to the business, keeps the books, and sells goods," and that "he has an interest in the stock of goods, and has had ever since he came here." But what that interest is, does not appear. This does not bring him within the definition of a merchant prescribed by the statute. There is nothing to show that he is engaged in both buying and selling, and certainly the business is not conducted in his name. The circuit court of appeals in the Ninth circuit has held that the statute is to be so construed as to eliminate the clause expressly inserted by congress, "which business is conducted in his own name," whenever the interest of the merchant is "real, and appears in the business and partnership articles in his own name." Without now expressing an opinion as to the soundness of so much of that decision as applies the doctrine laid down in Church of Holy Trinity v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, to expunge from a statute words seemingly inserted with careful intention, it is sufficient to say that there is not a scintilla of evidence in the case at bar to show that Pin Kwan has an interest in the Quong Sing Lung Company which is real, and appears in the business and partnership articles in his own name. The defendant, so far as the proof shows, is in fact but a clerk and bookkeeper, or assistant accountant, in the employ of the company, who sometimes sells its goods and keeps its books. He is not a merchant, but a skilled manual laborer, and as such liable to deportation. The decision of the district court is reversed, and deportation ordered.