## UNITED STATES v. LEO WON TONG.

(District Court, E. D. Missouri, E. D.   September 6, 1904.)

1. CHINESE EXCLUSION ACTS—PERSONS SUBJECT TO DEPORTATION—MERCHANT BECOMING LABORER.

Neither the Chinese exclusion act of November 3, 1893, c. 14, § 1, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320], nor Act May 5, 1892, c. 60, § 6, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], to which it was an amendment, requiring all "Chinese laborers" then within the United States to register, applied to Chinese merchants; nor do they authorize the deportation of a

¶ 1. Citizenship of Chinese persons, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.
See Aliens, vol. 2, Cent. Dig. § 77.

Chinese person who was then lawfully in this country in business as a merchant, and who continued in such business until after the time for registration had expired, because he subsequently became a laborer on his failure in business, and is not provided with a certificate of registration under said acts. .

On Appeal from Judgment and Order of United States Commissioner for Deportation of Defendant.

For the purpose of the opinion in this case I adopt the agreed statement of facts as follows: The defendant, Leo Won Tong, was arrested in the city of St. Louis, Mo., on the 25th day of July, 1904, by the United States marshal for the Eastern District of Missouri, under and by virtue of a warrant issued by Byron F. Babbitt, United States commissioner, on complaint of A. C. Ridgway, Chinese inspector, charging that the said Leo Won Tong, late of the city of St. Louis, in the state of Missouri, on or about the 25th day of July, A. D. 1904, at the city of St. Louis, in said district, in violation of the act of November 3, 1893, c. 14, § 1, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320], as amended by the Act of Congress of April 29, 1902, c. 641, § 3, 32 Stat. 177 [U. S. Comp. St. Supp. 1903, p. 189], was a Chinese laborer, not lawfully entitled to be and remain in the United States, for the reason that said Leo Won Tong does not have and is not provided with a certificate of identity; contrary to the form of the statute in such cases provided, and against the dignity of the United States of America. Said warrant was issued upon the complaint of A. C. Ridgway, Chinese inspector at St. Louis, charging that on the 25th day of July, 1904, the defendant, Leo Won Tong, was a Chinese laborer, not naturalized, and not lawfully entitled to be and remain in the United States, for the reason that he, the said Leo Won Tong, does not have and is not provided with a certificate of identity, as required by the acts of Congress of the United States of November 3, 1893, and April 29, 1902, contrary to the statutes in such case made and provided, and against the peace and dignity of the United States. Thereafter, on the 10th day of August, 1904, said defendant, Leo Won Tong, was by the United States commissioner adjudged to be unlawfully within the United States, as charged in said complaint, and was by said commissioner ordered to be deported to China. From this judgment and order of said commissioner the said defendant, Leo Won Tong, has regularly appealed to the District Judge of the United States for the Eastern Division of the Eastern Judicial District of Missouri, and it is hereby agreed by and between the United States, the said plaintiff, and Leo Won Tong, the said defendant, that said cause on said appeal shall be tried before and submitted to the said District Judge for his determination upon the following agreed statement of facts: It is hereby agreed and admitted that the defendant, Leo Won Tong, was born in China in 1864, and is 40 years of age; that he came to the United States in 1887, as a merchant, lawfully and regularly entering the United States as such merchant at the city of San Francisco, state of California, in the said year 1887; that immediately upon his arrival in the United States he embarked in business in partnership with other Chinamen as a merchant in the conduct of a general grocery store at the city of Rock Springs, Wyo., in which business he continued as a merchant until December, 1894, when he returned to his mother country; that in 1896 the defendant returned to the United States, at which time he was again lawfully and regularly admitted to the United States as a merchant, and immediately resumed his former business as a merchant at Rock Springs, Wyo.; that he remained and carried on business as a merchant at said Rock Springs from his said return to the United States in 1896 until in the year 1901, at which time, to wit, in the year 1901, he left Rock Springs, Wyo., and came to the city of St. Louis, Mo., and engaged in the business of operating a laundry at 3533 Easton avenue, and was so conducting a laundry at said place at the time of his arrest on the 25th day of July, 1904.

D. P. Dyer, U. S. Dist. Atty., and Horace L. Dyer, Asst. U. S. Dist. Atty.

P. R. Flitcraft, for defendant.

ROGERS, District Judge (after stating the facts). The sixth section of Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], reads as follows:

"And it shall be the duty of all Chinese laborers within the limits of the United States at the time of the passage of this act, and who are entitled to remain in the United States, to apply to the collector of internal revenue of their respective districts, within one year after the passage of this act, for a certificate of residence, and any Chinese laborer within the limits of the United States who shall neglect, fail, or refuse to comply with the provisions of this act, or who, after one year from the passage hereof, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by any United States customs official, collector of internal revenue or his deputies, United States marshal or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, as hereinbefore provided, unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate, and to the satisfaction of the court. and by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act; and if upon the hearing it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost.

"Should it appear that said Chinaman had procured a certificate which has been lost or destroyed, he shall be detained and judgment suspended a reasonable time to enable him to procure a duplicate from the officer granting it, and in such cases the cost of said arrest and trial shall be in the discretion of the court.

"And any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge."

By Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7, the section of the act of May 5, 1892, so above quoted, was amended and re-enacted, as follows:

"And it shall be the duty of all Chinese laborers within the limits of the United States who are entitled to remain in the United States before the passage of the act to which this is an amendment to apply to the collector of internal revenue of their respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States who shall neglect, fail, or refuse to comply with the provisions of this act and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by any United States customs official, collector of internal revenue or his deputies, United States marshal or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, as provided in this act and in the act to which this is an amendment, unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness, or other unavoidable cause he has been unable to procure his certificate, and to the satisfaction of said United States judge, and by at least one credible witness other than Chinese, that he was a resident of the United States on the fifth of May, eighteen hundred and ninety-two; and if, upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost.

"Should it appear that said Chinaman had procured a certificate which has been lost or destroyed, he shall be detained and judgment suspended a reasonable time to enable him to procure a duplicate from the officer granting it, and in such cases the cost of said arrest and trial shall be in the discretion of the court; and any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence

of such right, may apply for and receive the same without charge; and that no proceedings for a violation of the provisions of said section six of said act of May fifth, eighteen hundred and ninety-two, as originally enacted, shall hereafter be instituted, and that all proceedings for said violation now pending are hereby discontinued:

"Provided, that no Chinese person heretofore convicted in any court of the states or territories of the United States of a felony shall be permitted to register under the provisions of this act; but all such persons who are now subject to deportation for failure or refusal to comply with the act to which this is an amendment shall be deported from the United States as in said act and in this act provided, upon any appropriate proceedings now pending or which may be hereafter instituted.

"Sec. 2. The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation.

"The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant.

"Where an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant. he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except as was necessary in the conduct of his business as such merchant, and in default of such proof shall be refused landing.

"Such order of deportation shall be executed by the United States marshal of the district within which such order is made, and he shall execute the same with all convenient dispatch; and pending the execution of such order such Chinese person shall remain in the custody of the United States marshal, and shall not be admitted to bail.

"The certificate herein provided for shall contain the photograph of the applicant. together with his name, local residence, and occupation, and a copy of such certificate, with a duplicate of such photograph attached, shall be filed in the office of the United States collector of internal revenue of the district in which such Chinaman makes application.

"Such photograph in duplicate shall be furnished by each applicant in such form as may be prescribed by the Secretary of the Treasury."

See Act April 29, 1902, 32 Stat. 176 [U. S. Comp. St. Supp. 1903, p. 189].

It will be observed, by an examination of the agreed statement of facts, above set forth, that an error crept into the proceedings of the commissioner in stating that the appellant was arrested for a violation "of the act of November 3, 1893, as amended by the act of Congress of April 29, 1902." The commissioner simply reversed the order in which these acts were passed. It is apparent, from the reading of the acts themselves, that the appellant was arrested under section 6 of the act of November 3, 1893, which was an amendment of the act of May 5, 1892. By the terms of section 6, of the act of November 3, 1893, among other things, it is provided "that no proceedings for the violation of the provisions of section six of said act of May 5, 1892, as originally enacted, shall here-

after be instituted, and that all proceedings for said violation now pending are hereby discontinued." It was conceded in argument, and is apparent from the reading of the statutes above quoted, that appellant was arrested under the sixth section of the act of November 3, 1893 (28 Stat. 7, c. 14). That section of both these acts, by the very terms thereof, applies to laborers only. By the agreed statement of facts it appears that the appellant was not a laborer when either of these acts was passed. Appellant came to the United States as a merchant in 1887; located in business as a merchant at the city of Rock Springs, Wyo., immediately after his coming to this country, and continued as a merchant uninterruptedly until December, 1894—about seven years. In December, 1894, he returned to China, and in 1896 came back to the United States, and was lawfully and regularly admitted to the United States as a merchant, and immediately resumed his former business at Rock Springs, Wyo., where he remained and continued his business as a merchant until 1901. In the year 1901 he left Rock Springs, Wyo., and came to the city of St. Louis, Mo., and engaged in the business of operating a laundry at 3533 Easton avenue, and was so conducting the laundry at said place at the time he was arrested on July 25, 1904. The fact does not appear in the agreed statement of facts, but it does appear in the finding of facts by the commissioner, that the reason for leaving Wyoming and coming to St. Louis and opening the laundry was that he had failed in business in Wyoming. This statement shows conclusively that section 6 of the act of May 5, 1892, never had any application at all to the appellant, for the reason that at the time of its passage, and until the year had expired subsequent to its passage within which he had the right, under the act, to apply for a certificate of residence, had expired, he was a merchant, and not a laborer. The facts also make it equally clear that section 6 of the act of November 3, 1893, never had any application to the appellant, for the reason that on the passage of that act appellant was not a laborer, but was a merchant, and continued to be a merchant until the six months next after the passage of the act expired, within which time he had the right to apply for a certificate of residence as a laborer; and, being a merchant during that period, the act did not authorize him to apply for a certificate of residence. Becoming a laborer after the six months had expired, the law made no provision for his applying for a certificate as a laborer. It is true that section 6 of the act of November 3, 1893, provides that "any Chinese person, other than a Chinese laborer, having the right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge." Just what this provision is intended to cover is not quite clear, nor have I been able to find any case construing it. Whatever it may mean, or may have been intended to cover, it did not require the appellant, as long as he was a merchant, to apply for any certificate. If it was intended to apply to a merchant at all, it left the matter optional with him as to whether he would apply for it or not; and when he ceased to be a merchant, becoming a laborer, it had no application to him as a laborer, be-

cause it only applied "to any Chinese person other than a Chinese laborer."

So far as I have been able to find, there is no provision in the statute which applies to a state of case such as the one at bar. The act should not be so construed as to cover cases not falling within its purview. Certainly the admitted facts do not bring this case within the letter of the statute referred to; nor, in the opinion of the court, does it fall within its spirit. The manifest purpose of Congress was to prevent ·Chinese laborers from coming into this country. Laborers already in the country were not to be expelled if they complied with the terms of the statute by taking out their certificates as laborers, and no provision was made for the expulsion of merchants, nor was there any provision made for certificates being granted to merchants, nor does the statute which defines what a laborer is or what a merchant is make any provision for a change of status from a merchant to a laborer. If it was the intention of Congress that when a merchant lawfully in the country at the passage of the act should cease to be a merchant, and become a laborer, he should be deported, provision should have been made therefor. It made no such provision, and the presumption ought to be that it did not so intend. The prevention of Chinese laborers from coming into the country is quite a different thing from deporting a merchant who has failed in business, and from necessity become a laborer, and especially after the passage of the act and the expiration of the period of limitation within which a laborer had the right to apply for a certificate of residence. All the authorities, so far as they have been found, are quite uniform in support of the conclusions reached. United States v. Sing Lee (D. C.) 71 Fed. 680; In re Chin Ark Wing (D. C.) 115 Fed. 413; United States v. Louie Juen (D. C.) 128 Fed. 523; In re Yew Bing H. (D. C.) 128 Fed. 319. In the reasoning of these cases I quite agree, and they do not antagonize any of the authorities cited by counsel for the United States. United States v. Wong Hong (D. C.) 71 Fed. 283 (reversed by the Court of Appeals of the Ninth Circuit under the name of Wong Fong v. United States, 77 Fed. 168, 23 C. C. A. 110), while not directly in point, throws light upon this case, and is in harmony with the decisions cited.

The decision of the commissioner in this case is reversed, and set aside, and the appellant is discharged.